**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRCIT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES L. HOLLAND, JR., | **CIVIL** |
| Plaintiff, | **COMPLAINT** CASE |
| v. | NO. 2:21-CV-1024 |
| FLUOR MARINE PROPULSION, LLC, | |
| Defendant. | |

**COMPLAINT IN CIVIL ACTION**

AND NOW comes the Plaintiff, James L. Holland, Jr., who files this civil complaint based upon the following.

## I. JURISDICTION

1. This case is brought pursuant to the Federal questions in The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA").

2. Plaintiff filed a Charge of Discrimination with the E.E.O.C., No.533-2020-1461, received a neutral letter of dismissal and filed this complaint timely.

## II. THE PARTIES

3. Plaintiff is James L. Holland, Jr. ("Holland"), employee of Defendant, who resides at 962 Fordham Ave., Pittsburgh PA 15226.

4. Defendant is Fluor Marine Propulsion, LLC, ("Fluor"), employer of Plaintiff that has a local address of P.O. Box 79, West Mifflin, Pennsylvania 15122-0079 and P.O. Box 1072, Office of General Counsel, Schenectady, NY 12301.

## III. FACTS

5. Holland is an adult male over the age of forty (40).

6. Holland has been disabled under the meaning of the ADA with anxiety disorder that was diagnosed in 2006.

7. Holland is treated with prescribed medication.

8. Fluor Marine Propulsion ("Fluor") is a subcontractor for the United States Government and provides Naval Nuclear Labs ("NNL") with research and development.

9. Holland began working for Fluor in late 2018 in the position of "specialist applied technology technician" in West Mifflin, Pennsylvania.

10. Holland has worked the same site for thirty (30) years for Westinghouse, CBS, and Bechtel Marine Propulsion until Fluor took over.

11. For the most part, the staff remained the same.

12. As a specialist applied technology technician, Holland built, troubleshooted, repaired and operated thermal hydraulic test loops.

13. Adam Pardee ("Pardee") and Christian Korey ("Korey") supervised Holland while employed by Bechtel.

14. Korey promoted Holland to specialist.

### A. Disclosing his disability

15. Fluor first learned about Holland's disabilities in 2010 while Holland worked for Bechtel.

16. At the time, Holland had difficulty filling his prescriptions and felt symptoms at work.

17. Holland notified his co-worker, Tim Fox ("Fox") and left to fill his subscription.

18. Holland's supervisor, Sarah Larkin ("Larkin") and company doctor, Dr. Goldstein were subsequently informed about his disability and his medical need for leaving work.

19. Larkin transferred Holland to a new lab under the Supervision of, Dave Mozeik ("Mozeik") who Holland also informed about his disability.

20. Most recently, Brandon Staudt ("Staudt") supervised Holland and Holland began to have communication issues with Staudt and informed him about his disability.

B.  Exacerbating his Disability

21. In October of 2019, Staudt verbally disciplined Holland of failing to perform the lock out/tag out procedure ("LOTO") on a hot water supply line to a Loop.

22. A Loop a circular pathway of water passing through a system.

23. The LOTO procedures secure supply valves by locking and closing them.

24. Staudt did not inform Holland that a LOTO procedure was required for the job at issue when he assigned it.

25. Holland was disciplined, but had no way of knowing a LOTO was required for that job.

26. Staudt continued to remind Holland of his failing to perform the LOTO procedure.

27. Staudt's behavior went beyond constructive and became harassing and triggered Holland's anxiety disorder.

28. Holland explained to Staudt that his communications were triggering his disability and requested a reasonable accommodation from Staudt.

29. Holland handed Staudt articles about his Anxiety Disorder in hopes that they could communicate batter, this being a request for a reasonable accommodation.

30. Holland asked for clearer communications which would help them both.

31. Holland followed up with Staudt a week later, but Staudt told him he did not read the articles.

### C. The Events Leading to Discharge

32. On or about February 6, 2020, Staudt instructed Holland to perform a "swap out" of several digital flowmeters, known as "rosemounts" located within loop 28 in Hanger 2.

33. Staudt did not inform Holland that a LOTO procedure was expected.

34. On or about Monday, February 10, 2020, Staudt checked in with Holland on Loop 28 and again did not mention a LOTO procedure was expected.

35. Holland completed Loop 28 on February 10, 2020, without performing a LOTO procedure.

36. An hour later, Staudt approached Holland with the LOTO procedure for Loop 28, something he should have done much earlier.

37. Holland's disability was triggered, he froze and Staudt left.

38. Staudt returned and asked if Loop 28 was completed.

39. Holland then explained to Staudt that Loop 28 was completed before he provided him with the LOTO procedure.

40. Staudt did not dispute what Holland said, but instructed Holland not to perform further LOTO work.

41. Holland called Staudt after work and informed him he would be taking a week off due to treat his triggered disability.

42. Holland's disability was triggered by the continuing inconsistent instructions from Staudt on safety issues.

43. Staudt responded emotionless to the request, almost as if it was expected, and told Holland, "Please be advised if you miss 7 consecutive days to call Cigna's hotline" and "also notify Bettis medical before returning."

44. On or about February 13, 2020, Len Stellitano ("Stellitano") and Human Resources Representative, Mike, contacted Holland and placed him on administrative leave due to an "anonymous employee concern."

45. Over a month later, on or about March 16, 2020, Stellitano and Mike finally talked to Holland about what happened on Loop 28 and his disability.

46. Holland advised them about of his disability and his prior request for an accommodation.

47. Stellitano and Staudt telephoned Holland approximately another month later, on or about April 14, 2020 and terminated him for "breaking a company rule."

48. Holland was advised to file for unemployment.

### D.  Pretext for Discrimination

49. On or about April 14, 2020, after terminating Holland, Fluor sent him a termination letter that claimed there was a "violation of FMP's Rules of Conduct and Corporate safety manual."

50. The letter alleged that on February 10, 2020, Holland, in replacing pressure transmitter cells on Loop 28 in hanger 2, failed to follow the lockout/tagout safety requirements.

51. It is also alleged that Holland withheld the information that the work was completed without the safety controls.

52. The offered reasons in support of discharge are completely false.

53. Holland, at all times, followed Staudt's verbal instructions, custom and practice and all visible signage in performing the job.

54. The LOTO procedures come from Staudt and Holland did not receive them before he completed the job.

55. Staudt, knowing about Holland's disability, recklessly or intentionally continued to give Holland inconsistent and inadequate instructions placing work safety at risk.

56. A week before the Loop 28 incident, Holland asked Staudt for a copy of the LOTO procedure for Loop 27 just to be sure he strictly followed them.

57. Holland already knew there was a LOTO procedure for Loop 27 but was suspicious about Staudt's verbal instructions.

58. Holland had no similar concerns for Loop 28.

59. Holland worked on Loop 28 multiple times over the years without having to do a LOTO procedure.

60. Holland performed a test on Loop 28 several times a day by opening a running a loop with two (2) inch PVC piping.

61. The test had the potential to be very dangerous, but did not require a LOTO procedure.

62. Staudt failed to provide complete instructions to Holland on safety issues and was not held accountable.

63. Staudt recklessly or intentionally acted in a manner that exacerbated Holland's disability by continually providing Holland with incomplete instructions and refusing to pivot based upon his disability.

64. Staudt and Fluor failed to acknowledge Holland's request for a reasonable accommodation and failed to engage in any meaningful dialogue about his disability.

65. The direct result of Defendant's actions was the termination of Holland's long and valuable employment with Defendant.

## COUNT I: DISABILITY DISCRIMINATION

### (The Americans with Disabilities Act of 1990)

66. Plaintiff is disabled under the meaning of The Americans with Disabilities Act ("ADA").

67. Plaintiff notified his employer about his disability.

68. Plaintiff was qualified for the position he held with years of experience.

69. Plaintiff requested a reasonable accommodation, a basic understanding of his cognitive disability, how best to communicate with him and an understanding of its debilitating nature.

70. Plaintiff's supervisor acted in a deliberate manner to exacerbate his disabilities and refused to act in a way consistent with accommodation.

71. Plaintiff repeated his request to Defendant's decision makers and received no meaningful dialogue about his disability nor accommodation.

72. Defendant instead issued another adverse employment action, a termination of his employment.

73. Fluor failed to reasonably accommodate Plaintiff's disability.

74. Fluor failed to follow company procedures and engage in a meaningful interactive process in good faith required by The Americans with Disabilities Act.

75. The offered reasons in support of discharge of false and are pretexts for unlawful discrimination.

76. Holland obeyed all instruction and did not lie about his actions at any time.

77. As a direct result of disability discrimination, Plaintiff lost valuable wages and benefits.

78. Plaintiff requests all available relief, costs and fees and attorney fees for a willful and intentional violation of the Americans with Disabilities Act.

WHEREFORE Plaintiff prays for a judgment against Defendant and all available relief and damages permitted by law, costs, fees and attorney fees.

**JURY TRIAL DEMANDED**

Respectfully submitted,

*/s/ Erik M. Yurkovich*

ERIK M. YURKOVICH, ESQ.
PA ID 83432
Erik M. Yurkovich, Esq.
207 Pine Creek Road
Building 1, Ste. 201
Wexford PA 15090
T: 724-933-9199